UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TONY BONURA, individually and on behalf of
others similarly situated,

                            Plaintiff,

v.

UHL VENTURES LLC d/b/a Servpro of
Jamestown/Olean, and WILLIAM UHL,

                            Defendants.

_____

**REPORT AND
RECOMMENDATION**

**Case No. 1:22-cv-00395-JLS-JJM**

        Plaintiff Tony Bonura, a former employee of defendant Uhl Ventures, LLC,

moves this court for approval of the settlement of claims for violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.* [29].[1] The motion, which is unopposed, has

been referred to me by District Judge John L. Sinatra, Jr. for initial consideration [17].

        The proposed settlement provides "for a total of $17,250, to be distributed as

follows: $6,000 to Plaintiff Tony Bonura; $200 to opt-in Plaintiff Rebecca Knight; and $11,050

to Brown, LLC, consisting of $10,003.54 in attorneys' fees plus $1,046.46 in costs". Motion [29]

at 2. It "does not provide for any payment to, or releases o[f] any other obligations incurred by

any other current or former employees of Defendants" (id.), and requires the parties "to dismiss

this action with prejudice". Id. at 1.

        While Bonura insists that the settlement does "not involve any fraud or collusion"

([29] at 4), for the following reasons I strongly disagree.

_____

[1]       Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF
pagination.

**BACKGROUND**

On May 25, 2022 Bonura commenced this action as a "collective and class action . . . individually and on behalf of persons similarly situated" against Uhl Ventures and its owner, William Uhl, alleging "willful violations of the FLSA . . . and the New York Labor Law, §§650 *et seq.* and 190 *et seq.* and 12 NYCRR § 142-1.1 *et seq.* (collectively the 'NYLL')". Complaint [1], ¶1. He alleged that he "and other hourly-paid, non-exempt technicians of Defendants regularly worked over 40 hours per week but did not receive compensation for all hours worked due to Defendants' common unlawful policy of automatically deducting two 15-minute breaks per shift from their recorded time", and that he and they "they were or are subject to the same or similar unlawful practices, policy, or plan", that "their claims are based upon the same factual and legal theories", and that they all "suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices". Id., ¶¶2, 42, 47.

Bonura defined the proposed FLSA collective as "[a]ll hourly-paid technicians employed by Defendants at any time within the three years preceding the commencement of this action through the date of judgment" (id., ¶40), and the proposed Fed. R. Civ. P. ("Rule") 23 class as "[a]ll hourly-paid technicians employed by Defendants at any time within the six years preceding the commencement of this action through the date of judgment" (id., ¶44).

On June 9, 2022 Bonura's attorney, Jason T. Brown, filed consent forms adding Rebecca Knight and Anthony Meredith as plaintiffs [5-1]. On December 20, 2022 Brown withdrew Meredith's consent to join as a plaintiff [26]. That same day, he notified me that "the parties have mutually agreed to a settlement and dismissal of this action", and requested 21 days "to finalize their settlement papers and file a voluntary Joint Stipulation of Dismissal" [27]. I had

to remind him that "parties cannot privately settle FLSA claims with prejudice absent the approval of the district court or the Department of Labor" [28]. This motion followed.

## DISCUSSION

Bonura urges the court to "evaluate the fairness of the settlement agreement by applying the [following] factors . . . '(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion'". Motion [29] at 4, *quoting* Fisher v. SD Protection Inc., 948 F.3d 593, 599-600 (2d Cir. 2020).

While Bonura asserts that "the amount each Plaintiff will receive exceeds the sum total of 100% [of] his/her estimated unpaid wages for overtime hours owed under the FLSA, an equal amount in liquidated damages, and his/her estimated unpaid wages for regular hours owed under the NYLL" (motion [29] at 4), he offers no documentation (such as time records) supporting that assertion. Therefore, I "cannot properly evaluate the merits of the proposed settlement as the parties' conclusion regarding the settlement amount is not supported by any data. Without an estimate of the number of hours worked or calculation of the Plaintiff's possible range of recovery, the Court's ability to evaluate the merits of the Settlement Agreement is ultimately impossible." Luna v. J.S. Held LLC, 2023 WL 2214012, *6 (E.D.N.Y. 2023).

Moreover, "[w]here a settlement dismisses with prejudice both FLSA and state law claims . . . a district court must take into account at least the existence of the state law claims in assessing the reasonableness of the settlement, which turns in part on the total potential

recovery." <u>Fisher v. SD Protection Inc.</u>, 948 F.3d 593, 607, n. 12 (2d Cir. 2020). Bonura does not

adequately discuss the value of the NYLL claims which he proposes to dismiss. For example,

Counts II and IV of the Complaint allege violations of  NYLL §193, and while Bonura now

claims that recovery under §193 "would be challenging" ([29] at 3, citing 2014 and 2019

decisions), he does not suggest that his attorneys were unaware of those decisions in May 2022,

when Brown signed the Complaint certifying the viability of the class claims pursuant to Rule

11.[2] "An attorney is presumed to know the law", <u>Scher v. National Association of Securities</u>

<u>Dealers, Inc.</u>, 386 F. Supp. 2d 402, 409 (S.D.N.Y. 2005), <u>aff'd</u>, 218 F. App'x 46 (2d Cir. 2007) -

particularly an attorney like Brown, who states that he "has been practicing law for over twenty-

five (25) years", and "has successfully litigated collective and class actions nationwide" [29-4] at

7. Moreover, the motion omits *any* discussion of the strength of the NYLL §191 claims alleged

in Count III of the Complaint.

       Furthermore, the attorney time records which Bonura submits lead me to question

the thoroughness of their investigation. Although Bonura contends that the settlement was "the

product of arm's length bargaining between experienced counsel" ([29] at 4), on December 28,

2022 - eight days *after* Brown told me that the parties had agreed to a settlement - his colleague

Nicholas Conlon called Bonura "to confirm he is no longer employed by UHL Ventures", and

researched "whether 20-min[ute] breaks are compensable under the FLSA and NYLL" ([29-2] at

27). This is information that counsel would have wanted to confirm before agreeing to settle.

---

[2]     That Rule "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed". <u>Knipe v. Skinner</u>, 19 F.3d 72, 75 (2d Cir. 1994). By signing the Complaint, Brown certified "that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances", it was "not being presented for any improper purpose" and that the claims being alleged were "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law". Rule 11(b)(1), (2).

Much more troubling, however, is Bonura's failure to explain why he and his attorneys decided to abandon the interests of the similarly situated employees on whose behalf he commenced this action. For example, he never sought approval to send a notice to potential opt-in FLSA plaintiffs, notwithstanding the "low standard of proof" for such a request, requiring only "a modest factual showing that [he] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law". Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010).

Moreover, he commenced this action not only as an FLSA collective action, but also as a Rule 23 class action for the NYLL claims. Other than the time frame involved (three years for FLSA violations versus six years for NYLL violations), the Rule 23 class which he defined was identical to the FLSA collective, and the allegedly wrongful conduct to which both groups were subjected was the same - yet he fails explain why he made no effort to certify the NYLL class.

"[A]n allegation of class representation is attended by serious consequences." Rothman v. Gould, 52 F.R.D. 494, 496, n.1 (S.D.N.Y. 1971). "When a class-action complaint is filed, the named plaintiff, as the putative class representative, takes on a special role with duties not typically borne by the ordinary plaintiff who is merely pursuing his own claim. A class-action complaint seeks relief for an entire class of persons and, from the moment the class action is commenced, the named plaintiff operates in a representative capacity for the class." Kerner v. City and County of Denver, 2012 WL 7802744, *7 (D. Colo. 2012), adopted, 2013 WL 1222394 (D. Colo. 2013). "[T]he proposed class representative must have an interest in vigorously pursuing the claims of the class", In re Literary Works in Electronic Databases Copyright

Litigation, 654 F.3d 242, 249 (2d Cir. 2011), and Bonura promised to "fully and adequately protect the interests of the Rule 23 Class". Complaint [1], ¶48.

       Bonura's attorneys were likewise obligated to act in the best interest of the class, even though it had not yet been certified. "[A]lthough prior to class certification there may be no formal attorney-client relationship between putative class counsel and a putative class, there is little doubt that an attorney pursuing a class suit . . . generally must act in the class's best interests. Courts sometimes say that putative class counsel have a fiduciary duty to the incipient class." 6 Newberg and Rubenstein on Class Actions §19:2 (6th ed.); O'Connor v. Uber Technologies, Inc., 2017 WL 3782101, *6, n. 2 (N.D. Cal. 2017) ("[p]rior to certification, putative class counsel has . . . a fiduciary duty to the class"); Rule 23(g)(2), 2003 Advisory Committee Note ("an attorney who acts on behalf of the class before certification must act in the best interests of the class as a whole").

       The Complaint alleged that "class certification is appropriate" ([1], ¶52), that defendants had violated NYLL §§191 and 193 (id., ¶¶74,83, 87), and that the class was entitled to recover for those violations pursuant to NYLL §§198 and 663 (id., ¶¶77, 83, 87). "It must be presumed, or at least firmly expected, that responsible lawyers, before they put their names to class allegations, will have made some minimally careful explorations to satisfy themselves of the *prima facie* existence of a class, a claim on behalf of the class, and their suitability to present themselves in the fiduciary role of class representatives . . . . In the face of that expectation, and with no showing either of further researches or of changes in any pertinent circumstances

affecting the putative class, counsel will not be allowed to forget the whole business on the mere assertion that it was a mistake to begin with." <u>Rothman</u>, 52 F.R.D. at 495-96.[3]

The fact that the proposed settlement "provide[s] the two Plaintiffs with a total of $6,200, which exceeds their estimated maximum potentially recoverable FLSA . . . damages" ([29] at 1) is troubling, since parties may not "us[e] the threat of class actions to extract an undeserved premium on an individual claim". <u>Wuest v. My Pillow, Inc.</u>, 2019 WL 3577176, *3 (N.D. Cal.  2019). While the dismissal of class claims "may follow a legitimate decision that a claim is atypical or meritless" (<u>id.</u>, *4), it "may also be the culmination of a process in which the representative plaintiff increases his bargaining leverage by filing a class suit and then attempts to abandon the class when his personal objectives have been met. Such a use of the class action may properly be called an abuse because none of the policies underlying the creation of the device are advanced." <u>Id.</u>

Since Bonura fails to explain what has changed in the ten months since his attorney signed the Complaint, I am left to conclude that the commencement of this action was nothing more than an attempt to increase his bargaining leverage. That conclusion is reinforced by the size of counsel's fee request, namely for an award of $10,003.54 in fees and $1,046.46 in costs ([29] at 8), totaling $11,050. They request an award of $5,525 for Bonura's claim ([29-1] at 4) and the same amount for Knight's claim (<u>id.</u> at 14). Each request must be considered separately,[4] meaning that the requested fee of $5,525 for Knight's claim is *over 27 times* the amount of her $200 recovery.

---

[3]     Although Rule 23(e) requires court approval only for the dismissal of a certified class action, here the proposed dismissal is part and parcel of the settlement of FLSA claims, which do require court approval.

[4]     Counsel "[a]ssessed whether to combine Bonura and Knight agreements into one doc[ument] . . . but then decided to keep them separate". [29-2] at 27.

Bonura argues that the court may not "us[e] proportionality as an outcome determinative factor". [29] at 6, *quoting* Fisher, 948 F.3d at 606. However, although Fisher cautioned that "the percentage of attorneys' fees cannot be the determinative factor", it recognized that "in some cases the proportion of fees may be relevant in considering the reasonableness of an award". Id. at 603. Fisher also holds that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained". Id. at 606, *quoting* Farrar v. Hobby, 506 U.S. 103, 114 (1992).

"A district court's assessment of the degree of success achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims . . . . Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 152 (2d Cir. 2008). In Barfield, the court noted that "plaintiff's primary aim in this litigation, as reflected in her complaint and in the first four months of litigation[,] was to certify a collective action . . . . Her motion failed because counsel could not make even the modest factual showing required to support an FLSA collective action. It is against this background of anticipated relief . . . that plaintiff's recovery of . . . damages for herself appears to reflect only a small degree of success." Id. at 152.

As in Barfield, the relief which Bonura claims to have obtained for himself and Knight pales in comparison to the relief which he requested, namely certification of a collective action with respect to the FLSA claims, certification of a class action with respect with respect to the NYLL claims, and judgment awarding him, the FLSA collective, and the Rule 23 class "the full amount of damages and liquidated damages available by law" (Complaint [1] at 13, ¶¶a, b,

g). Moreover, whereas the plaintiff in <u>Barfield</u> at least attempted to certify an FLSA collective, Bonura and his attorneys did not even bother.

While Bonura claims that his attorneys have "expended over 108.6 hours on this matter to date" ([29] at 7), "if a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." <u>Farrar</u>, 506 U.S. at 114.

Last but not least, I am greatly troubled by counsel's covenant in each Settlement Agreement "that they do not presently represent any other current or former employees of the Company on whose behalf they intend to bring any demands or litigation against the Company" [29-1] at 4, 14. "Such a provision raises the specter of defendants settling FLSA claims with plaintiffs, perhaps at a premium, in order to avoid a collective action or individual lawsuits from other employees whose rights have been similarly violated." <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199, 206 (2d Cir. 2015).[5]

## CONCLUSION

"[T]he potential for abuse in such settlement[s] . . . underscores why judicial approval in the FLSA setting is necessary." <u>Cheeks</u>, 796 F.3d at 206. Bonura's motion is a perfect example of such abuse. Therefore, I recommend that it be denied.

Unless otherwise ordered by District Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by March 23, 2023. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely

---

[5]     <u>Cheeks</u> involved "a pledge by plaintiff's attorney not to represent any person bringing similar claims against Defendants" (<u>id.</u>), whereas here the attorneys state merely that they "do not presently represent" other employees who may sue defendants. However, in the context of the other factors discussed herein, I consider that to be a distinction without a difference.

. . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838

F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

        Moreover, the district judge will ordinarily refuse to consider *de novo* arguments,

case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal</u>

<u>Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

        The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local

Rules of Civil Procedure, written objections shall "specifically identify the portions of the

proposed findings and recommendations to which objection is made and the basis for each

objection . . . supported by legal authority", and must include "a written statement either

certifying that the objections do not raise new legal/factual arguments, or identifying the new

arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply

with these provisions may result in the district judge's refusal to consider the objections.

Dated: March 9, 2023

                         ___/s/ Jeremiah J. McCarthy_____
                           JEREMIAH J. MCCARTHY
                           United States Magistrate Judge