UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TONY BONURA, individually, and on
behalf of others similarly situated,

               Plaintiff,                           22-CV-395 (JLS) (JJM)

       v.

UHL VENTURES LLC d/b/a SERVPRO
OF JAMESTOWN/OLEAN and
WILLIAM UHL,

               Defendants.

_____

## ORDER GRANTING MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION SETTLEMENT

      THIS CAUSE, having come before the Court on the joint motion of Plaintiff
Tony Bonura and Defendants Uhl Ventures LLC d/b/a Servpro of Jamestown/Olean
and William Uhl (collectively the "Parties") for final approval of their collective
settlement agreement (the "Settlement"). The Court, having read and considered
the papers on the motion, the arguments of counsel presented at the fairness
hearing on July 26, 2024, and the law, and good cause appearing therefore,

      IT IS ORDERED:

      1.     The parties' Settlement is finally approved as it meets the criteria for
~~preliminary~~ settlement approval. The Settlement appears to be the product of
arms-length and informed negotiations and falls within the range of possible
approval as fair and reasonable, and to treat all Collective Members fairly.

2.    The Court hereby finally certifies the following Collective pursuant to Section 216(b) of the FLSA, for the purpose of entering a settlement in this matter, in accordance with the terms of the Settlement Agreement:

> all current and former hourly-paid technicians employed by Defendants during any time from May 25, 2019 through May 24, 2022 who are listed on Exhibit 3 [to the Settlement Agreement].

3.    Upon the Effective Date of the Settlement, Collective Members who have submitted timely, valid Consent to Join Forms will, on their own behalf and on behalf of their respective current, former, and future heirs, executors, administrators, and assigns, forever discharge and fully release Releasees from all claims, debts, losses, demands, obligations, rights, liabilities, damages, penalties, complaints, and causes of action arising under the Fair Labor Standards Act, New York Labor Law, and New York Minimum Wage Orders that are or could have been asserted in Plaintiff's operative Complaint based on the facts alleged therein, arising at any time from the beginning of time through the date of the Court's Preliminary Approval Order ("Claims"), including all Claims for deductions from pay and any and all minimum wage, straight-time, and overtime claims, and any interest, penalties, liquidated damages, and attorneys' fees and costs relative to all such Claims.  Collective Members other than Plaintiff Bonura who have not submitted timely, valid consent forms will not release any claims and shall not be entitled to any portion of the Settlement Fund.

4.      The Settlement Administrator and the Parties are directed to carry out the Settlement's terms and provisions, including the distribution of Settlement Awards to Participating Collective Members.

5.      The Settlement Administrator shall send the notice as set forth in Exhibit 4 to the one (1) hourly-paid technician whose employment ended before May 25, 2019, who received bonuses similar to those Plaintiff alleges receiving in the Complaint, and may have received overtime compensation at a rate that did not reflect such bonus compensation, informing him of this action, the settlement and his exclusion therefrom, and that his statute of limitations for his NYLL claims was tolled during the pendency of this Action, as specified by the Settlement Agreement.

6.      This action is dismissed with prejudice, with each side bearing its own attorneys' fees and costs, subject to the Court's ruling on Plaintiff's motion for approval of attorneys' fees, litigation costs, and settlement administration costs.

7.      The Clerk shall enter a final judgment consistent with this order.

SO ORDERED.

Dated:      July 26, 2024
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

# EXHIBIT 1

## <u>COLLECTIVE ACTION SETTLEMENT AGREEMENT</u>

This Collective Action Settlement ("Settlement Agreement," or "Agreement") is made by Tony Bonura ("Plaintiff Bonura") on behalf of himself and the Collective Members as defined herein, on the one hand, and UHL Ventures LLC d/b/a Servpro of Jamestown/Olean and William Uhl ("Defendants"), on the other hand, in the above-captioned action ("Action"). All provisions and obligations arising under this Settlement Agreement shall be contingent on approval by the Court, as set forth more specifically herein.

## I.  <u>PROCEDURAL HISTORY</u>

Plaintiff Bonura commenced this Action on May 25, 2022. The Action is currently pending before the United States District Court for the Western District of New York ("Court") and is captioned as *Tony Bonura vs. UHL Ventures LLC d/b/a Servpro of Jamestown/Olean and William Uhl*, Civil Case No. 22-cv-00395.

The Complaint alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by deducting two 15-minute breaks per shift from the time recorded by Plaintiff Bonura and other hourly-paid technicians, thus improperly reducing the total time for which they received hourly wages by up to 30 minutes per shift. The Complaint alleges that Defendants also violated the FLSA and NYLL by paying technicians' overtime hours at a rate of 1.5 times their base hourly rate, as opposed to 1.5 times their base hourly rate plus the nondiscretionary bonuses they allegedly received.

The FLSA claims in the Complaint are asserted by Plaintiff Bonura individually and on a collective basis pursuant to 29 U.S.C. § 216(b), with the putative FLSA collective defined to include all other similarly situated hourly-paid technicians employed by Defendants at any time

within the three years preceding the commencement of the Action through the date of judgment. The NYLL claims in the Complaint are asserted by Plaintiff Bonura individually and on a class basis pursuant to Rule 23 of the Federal Rules of Civil Procedure, with the putative Rule 23 class defined to include hourly-paid technicians employed by Defendants in New York at any time within the six (6) years preceding the commencement of the Action through the date of judgment. Plaintiff Bonura has not yet moved for conditional or final certification of the collective or class, and the Court has not issued any orders certifying or declining to certify the collective or class.

On June 9, 2022, written consent forms were filed on behalf of Collective Members Rebecca Knight and Anthony Meredith. On December 20, 2022, the written consent form previously filed on behalf of Anthony Meredith was withdrawn on his behalf.

Defendants deny committing any wrongful acts against Plaintiff Bonura, the Collective Members, and the putative class members. Plaintiff Bonura and Defendants acknowledge that there is a *bona fide* dispute over whether Plaintiff Bonura, the Collective Members, and the putative class members are entitled to additional wages under federal and state laws.

On April 10, 2023 the Court denied a motion by Plaintiff Bonura and Defendants to approve settlement agreements executed by Plaintiff Bonura and Rebecca Knight, respectively. As a result, Plaintiff Bonura, Rebecca Knight, and Defendants have abandoned those previously proposed settlements agreements.

On July 6th, 2023, Mediator William G. Bauer held a mediation session with Plaintiff Bonura and Defendants that resulted in an agreement in principle to this Settlement Agreement, subject to the Court's approval.

2

II.     **DEFINITION OF "COLLECTIVE," "COLLECTIVE MEMBERS,"
        "COLLECTIVE PERIOD,"**

No collective has been certified in this Action pursuant to 29 U.S.C. § 216(b). As part of this Settlement, the Parties will ask the Court to certify the following Collective: all current and former hourly-paid technicians employed by Defendants ("Collective Members") during any time from May 25, 2019 through May 24, 2022 ("Collective Period") who are listed on Exhibit 3.

This Agreement does not constitute an admission of liability by Defendants, who have expressly denied any and all liability in the Action. Defendants, however, stipulate for settlement purposes only that the requirements for conditional and final certification of a collective action pursuant to 29 U.S.C. § 216(b) are met with respect to the Collective Members, and shall not oppose conditional or final certification of the collective described herein solely for purposes of obtaining the Court's approval of this Settlement Agreement. Neither this Stipulation nor any statements made or documents exchanged solely for mediation and settlement of the Action, nor any documents filed by the Parties in connection with this Settlement, shall be admissible or offered into evidence in this Action or any other action for any purpose whatsoever other than for this Settlement, or as agreed upon by the Parties.

III.    **BENEFITS OF SETTLEMENT**

The Parties reached this Settlement after substantial written discovery, exchange of documents, and investigation of the facts. Plaintiff recognizes the expense and length of the proceedings necessary to continue the litigation against Defendants through trial and through any possible appeals. Plaintiff also has taken into account the uncertainty and risk of further litigation, the defenses raised by Defendants, and the difficulties and delays inherent in litigation. In addition, this Settlement will provide a substantial monetary settlement for Collective

Members. Based on the foregoing, the Plaintiff and Plaintiff's Counsel have determined that the Settlement set forth in this Agreement is a fair, adequate, and reasonable settlement, and is in the best interests of the Collective Members.

Defendants have concluded that any further defense of this litigation would be protracted, uncertain, and expensive for all Parties. Unless this Settlement is made, Defendants will need to devote substantial amounts of time, energy, and resources to the defense of the claims asserted by Plaintiff. Defendants have, therefore, agreed to settle in the manner and upon the terms set forth in this Agreement to effectuate the full, final, and complete resolution of the Action.

The Parties agree to cooperate and take all necessary and appropriate steps to effectuate the terms of this Settlement, and, upon the entry of an order granting final approval to this Settlement, shall dismiss with prejudice the Action as set forth below.

## IV.     SETTLEMENT TERMS

NOW, THEREFORE, IT IS HEREBY STIPULATED, by and among Plaintiff Bonura on behalf of himself and the Collective on the one hand, and Defendants on the other hand, subject to the approval of the Court, that the Action be compromised and settled pursuant to the terms and conditions set forth in this Settlement Agreement and that upon Final Approval (as defined below), the Action shall be dismissed with prejudice, subject to the following terms and conditions:

### 1.  Definitions.

As used in this Settlement, the following terms are defined as follows:

"Approved Attorney's Fees and Costs" means the amount of up to $6,500.00 in attorneys' fees and $592 in litigation costs for which Plaintiff's counsel will seek Court approval pursuant to this Settlement Agreement.

4

"Collective," "Collective Members," "Collective Period" shall have the meanings stated in Section II above.

"Collective Notice Packet" means the Notice of Proposed Collective Action Settlement, attached as Exhibit 1, the Consent-to-Join Form, attached as Exhibit 2, and a business reply mail envelope addressed to the Settlement Administrator.

A "Collective Settlement Award" means the payment that will be issued to each Participating Collective Member pursuant to this Settlement Agreement, which be for at least the amounts reflected in Exhibit 3.

"Consent to Join Form" refers to the document, attached as Exhibit 2, that Collective Members other than Plaintiff Bonura must timely complete and submit in order to receive Collective Settlement Awards and to become bound by this Settlement Agreement.

"Court" means the United States District Court for the Western District of North York.

"Effective Date" means the latest date after which all of the following have occurred: (1) this Settlement has been executed by Plaintiff and Defendants; (2) the Court has given preliminary approval of the Settlement; (3) notice has been sent to the Collective Members, providing them with an opportunity to opt in to the Settlement; (4) Final Approval; and (5) the later of the following events: the period for filing any appeal or other appellate proceeding opposing the Settlement has elapsed without any appeal or other appellate proceeding having been filed; any appeal or other appellate proceeding opposing the Settlement has been dismissed finally and conclusively with no right to pursue further remedies or relief; or any appeal or other appellate proceeding has upheld in all respects the Court's Final Approval with no right to pursue further remedies or relief. In this regard, it is the intention of the Parties that the Settlement shall not become effective until the Court's order approving the Settlement is

5

completely final and there is no further legal recourse by an appellant or objector who seeks to contest the Settlement.

"Final Approval" means the date by which this Settlement is finally approved as provided in this Agreement and the Court enters Final Judgment and Order of Dismissal with Prejudice ("Final Judgment" or "Judgment"), or in the event of an appeal of such Final Judgment, the date that an appellate court upholds the Final Judgment.

"Net Settlement Amount" shall refer to the difference between Settlement Fund and the total amount of payments approved by the Court for the Approved Attorney's Fees and Costs.

"Opt-in Deadline" shall refer to the forty-fifth (45th) day after the Settlement Administrator mails and emails the Collective Notice Packet to Collective Members.

"Participating Collective Members" shall refer to Plaintiff Bonura, and all Collective Members who submit timely, valid Consent to Join Forms.

"Parties" means the Plaintiff (including Plaintiff Bonura on behalf of himself and the Collective Members) and Defendants.

The term "Plaintiff's Counsel" means Brown, LLC.

The term "Releasees" means Defendants and Defendants' present and former parent companies, subsidiaries, and affiliated companies (whether now or hereafter), and each of their respective shareholders, owners, insurers, members, officers, directors, employees, attorneys, managers, agents, administrators, successors, and assigns.

"Settlement" means the terms, conditions, and obligations described in this Settlement Agreement.

"Settlement Administrator" means ILYM Group, Inc..

"Settlement Administration Costs" refers to the monetary compensation the Settlement Administrator shall receive for administering the Settlement Agreement.

"Settlement Fund" shall refer to the money that Defendants will pay into a Settlement Fund, in accordance with Paragraph IV.2 below. The Settlement Fund shall consist of a maximum total payment of $32,500.00.

### 2. Settlement Fund.

No later than thirty (30) days after Final Approval by the Court, Defendants shall deposit an amount determined in accordance with this Section IV.2 (the "Settlement Amount") in the Settlement Fund established by the Settlement Administrator. The Settlement Amount shall be the sum of the Collective Settlement Awards to Participating Collective Members and the amounts approved by the Court for Attorneys' Fees and Litigation Costs. In addition to the Settlement Amount, Defendants shall be responsible for paying any lawfully required employer share of payroll taxes. Employer payroll taxes will not be paid from the Settlement Fund. At Defendants' option, however, Defendants may remit payment, in addition to the payment of the Settlement Amount to the Settlement Fund, in an amount equal to its total responsibility for any employer share of payroll taxes to the Settlement Administrator for the Settlement Administrator to pay on Defendants' behalf. The maximum amount that Defendants shall be required to pay under this Settlement is $32,500.00, plus the employer share of payroll taxes with respect to the Settlement Amount. Any portion of the Settlement Fund not included in the Settlement Amount shall remain the property of Defendants.

### 3. Settlement Administration Costs.

The Parties have selected ILYM Group, Inc. to administer this settlement. Plaintiff's Counsel shall seek approval of the Settlement Administration Costs, to be paid to the Settlement Administrator by Plaintiff's Counsel. Plaintiff's Counsel agrees, subject to Court approval, to

7

pay the Settlement Administration Costs to the Settlement Administrator separately from the Settlement Fund, and to not seek any reimbursement therefor.

### 4. Releases.

#### A. Collective Members

Upon the Effective Date, Collective Members who have submitted timely, valid Consent to Join Forms will, on their own behalf and on behalf of their respective current, former, and future heirs, executors, administrators, and assigns, forever discharge and fully release Releasees from all claims, debts, losses, demands, obligations, rights, liabilities, damages, penalties, complaints, and causes of action arising under the Fair Labor Standards Act, New York Labor Law, and New York Minimum Wage Orders that are or could have been asserted in Plaintiff's operative Complaint based on the facts alleged therein, arising at any time from the beginning of time through the date of the Court's Preliminary Approval Order ("Claims"), including all Claims for deductions from pay and any and all minimum wage, straight-time, and overtime claims, and any interest, penalties, liquidated damages, and attorneys' fees and costs relative to all such Claims. Collective Members other than Plaintiff Bonura who do not submit timely, valid consent forms will not release any claims and shall not be entitled to any portion of the Settlement Fund.

#### B. Plaintiff Bonura.

Upon the Effective Date of this Settlement, Plaintiff Bonura, each on his own behalf, and on behalf of his heirs, representatives, executors, administrators, successors and attorneys, hereby RELEASES and DISCHARGES Releasees, to the fullest extent permitted by law, from any and all actions, causes of action, demands, suits, charges, claims, grievances and complaints that he has or may have against the Releasees, relating to acts, occurrences, or events arising on or before the date of this Agreement, including all claims involving the continuing effects of

such acts, occurrences, or events, whether known or unknown, asserted or unasserted. Plaintiff Bonura acknowledges that such release includes, to the fullest extent permitted by law, all rights and claims relating to each of his employment and separation from employment with Defendants, whether before courts, administrative agencies, arbitration or other forums wherever situated, including, but not limited to, all equitable and common law claims, tort claims and claims for breach of an express or implied contract, breach of a covenant of good faith and fair dealing, unpaid wages and benefits, attorneys' fees and costs, promissory estoppel, intentional interference with contract or business expectancy, fraud, negligent or intentional misrepresentation, defamation, invasion of privacy, wrongful discharge, unlawful discrimination, retaliation or interference with the exercise of protected rights, negligent or intentional infliction of emotional distress, negligent hiring, supervision or retention, and all claims under applicable federal, state and local statutes and laws relating to his or her employment with the Company, including, but not limited to the Fair Labor Standards Act, New York Human Rights Law, New York Labor Law, and New York Minimum Wage Orders. Plaintiff Bonura acknowledges that this release does not waive rights or claims, if any, that arise after this Agreement is entered into and effective between the signatories hereto.

Plaintiff Bonura agrees that if any claim released in Section IV.4 of this Agreement should be prosecuted in his name before any court or administrative agency, he waives and agrees not to take any award of money or other damages and will immediately request in writing that the claim or matter on his behalf be withdrawn. Plaintiff Bonura further covenants and agrees that he will not seek to participate in, nor will he accept any benefit from, any class action or other action or proceeding prosecuted in his name relating to the claims released in Section IV.4 of this Agreement, and that he will not offer assistance or testimony against Defendants in

9

any such claim or action unless instructed to do so by a court, agency, or other body, and then only after she has provided Defendants with written notice of any such instruction.

### C. Releasees.

Releasees hereby RELEASE and DISCHARGE Plaintiff Bonura, to the fullest extent permitted by law, from any and all actions, causes of action, demands, suits, charges, claims, grievances and complaints that Releasees have or may have against Plaintiff, relating to acts, occurrences, or events arising on or before the date of this Agreement, including all claims involving the continuing effects of such acts, occurrences, or events, whether known or unknown, asserted or unasserted.

### 5. Timeline of Settlement Events.

The following timeline for the Settlement events listed sets forth the actions that must be taken under this Agreement. The date of Preliminary Approval is the base timeline for all actions. The Parties will file a Joint Motion for Preliminary Approval of the Settlement with the Court that shall be accompanied by a Proposed Order specifically stating that the Court approves the notice procedures and release provisions described herein. If filing or approval is accelerated or delayed, the timeline stated below will be amended accordingly.

- Within 7 days after Preliminary Approval, Defendants will provide the Settlement Administrator an Excel spreadsheet with the following information about each Collective Member: name, last known address, social security number or other tax identification numbers, personal email address (if on file with Defendants), and telephone number (if on file with Defendants).

- No later than 14 days after Preliminary Approval, the Settlement Administrator will send the Collective Notice Packet to all Collective Members via regular mail, e-mail, and text message.

- The Collective Notice Packet shall inform all Collective Members that they have forty-five (45) days following the date on which the Notice Packet was mailed, to claim their Collective Settlement Award by submitting a Consent to Join Form to the Settlement Administrator. All Consent to Join Forms must be postmarked or transmitted to the Settlement Administrator within such period to be deemed valid and timely.

- The Notice Packets will be mailed using the most current mailing and e-mail address information. Within twenty (20) days of the date of the initial mailing, the Settlement Administrator shall promptly conduct a second mailing for any Collective Member whose Notice Packet is returned as undelivered and for whom a forwarding address is provided by the U.S. Postal Service or obtained through skip-tracing. The Settlement Administrator shall also provide Defendants' counsel with a listing of all Collective Members whose Notice Packet was returned as undelivered upon initial mailing. In the event that Defendants provide the Settlement Administrator with an updated address for any such Collective Members, the Settlement Administrator shall send a Notice Packet to such address. If, after a second mailing, the Notice Packet for a Collective Member is again returned as undelivered, then the notice mailing process shall end for that Collective Member.

11

- Upon completion of these steps by the Settlement Administrator, the Parties shall be deemed to have satisfied their obligation to provide the Notice Packet to each Collective Member, and each Participating Collective Member shall be bound by all terms of the Settlement and the Court's Order and Final Judgment including the release of claims provided in Paragraph IV.4(A).

- No later than 21 days after the Opt-in Deadline, or such other date set by the Court, Plaintiff shall file a Joint Motion for Final Approval of the Settlement and an Unopposed Motion for Approval of Attorneys' Fees, Litigation Costs, and Settlement Administration Costs.

- Within 10 days after the Effective Date, the Settlement Administrator will mail settlement checks to Participating Collective Members in the amounts set forth in Exhibit 3.

- Participating Collective Members shall have 120 days after the Settlement Administrator mails the settlement checks to cash such settlement checks. After thirty (30) days have passed following the deadline described in the preceding sentence, all checks not cashed by this deadline will be donated to the National Employment Law Project.

6. **Payments to Collective Members.**

(a)     By the time specified in Section IV.5, the Settlement Administrator shall issue checks to each Participating Collective Member in the amounts set forth in Exhibit 3, which the Parties agree represents each Participating Collective Members' proportionate share of the total damages potentially recoverable to all Collective Members under the claims asserted in the operative Complaint, based on Plaintiff's Counsel's analysis of the Collective Members'

12

payroll records. The Notice of Proposed Collective Action Settlement shall inform each Collective Member of the monetary amount he or she stands to receive by submitting a timely, valid Consent to Join Form, as well as the time period and methodology used to determine that monetary amount, and that his or her statute of limitations to pursue NYLL claims in a separate lawsuit was tolled during the pendency of the Action. Any amounts set forth in Exhibit 3 that are attributable to Collective Members other than Plaintiff Bonura who do not submit a timely, valid Consent to Join Form shall not be included in the Settlement Amount.

(b)     One-half of each Participating Collective Member's Collective Settlement Award will be paid as owed back wages. The other half will be paid as liquidated damages. From each Participating Collective Member's back wages, payroll deductions will be made by the Settlement Administrator for state and federal withholding taxes and any other applicable payroll deductions. The Settlement Administrator will pay the amounts withheld to the appropriate taxing authorities as well as the employer's share of all applicable taxes on any back pay check distributed to the Participating Collective Member. The Settlement Administrator will issue an IRS Form W-2 for the back pay payment to each Participating Collective Member and will issue an IRS Form 1099 to each Participating Collective Member for the payment issued to them for liquidated damages.  Employer payroll taxes will not be paid from the Settlement Fund and Defendants will be responsible for paying any such taxes in addition to the Settlement Fund. Upon expiration of the check cashing deadline, all uncashed settlement checks shall revert to the Settlement Fund and then be distributed to the National Employment Law Project. Participating Collective Members are responsible to pay the appropriate individual taxes due on the Settlement Awards they receive. Plaintiff's Counsel, counsel for Defendants, and Defendants do not intend this Agreement to constitute legal advice relating to tax liability of any Collective Member. To

the extent that this Agreement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal, state or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

(c) **Settlement Payments Do Not Trigger Additional Benefits.** All Collective Settlement Awards to Participating Collective Members shall be deemed paid to such Participating Collective Members solely in the year in which such payments actually are received by the Participating Collective Members. It is expressly understood and agreed that the receipt of such Settlement Awards will not entitle any Participating Collective Member to additional or increased compensation or benefits under any company bonus, contest, or other compensation or benefit plan or agreement in place during the period covered by the Settlement. It is the intent of this Settlement that the Collective Settlement Awards provided for in this Agreement are the sole payments to be made to Participating Collective Members in consideration for the Release provided in Paragraph IV.4(A), and that the Participating Collective Members are not entitled to any new or additional compensation or benefits as a result of having received the Settlement Awards (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

7. **Payment of Attorneys' Fees and Costs.**

(a) Within 10 days after the Effective Date, the Settlement Administrator shall pay to Plaintiff's Counsel from the Settlement Fund all Attorneys' Fees and Litigation Costs approved by the Court (the "Approved Attorney's Fees and Costs").

(b) Plaintiff's Counsel shall ask the Court to award them no more than $592 in Litigation Costs, plus Attorneys' Fees in the amount of up to twenty percent (20%) of the Settlement Fund ($6,500.00), multiplied by the percentage of the Net Settlement Fund to be paid

14

to Participating Collective Members. If the Court approves an award of Attorneys' Fees and Litigation Costs in an amount less than $7,092.00, then the difference between that amount and the amount awarded to Plaintiff's Counsel shall be apportioned on a *pro rata* basis to the Collective Settlement Awards to Participating Collective Members.

(c)     The payment of the attorneys' fees and costs awarded to Plaintiff's Counsel shall constitute full satisfaction of the obligation to pay any amounts to any person, attorney, or law firm for attorneys' fees, expenses, or costs in connection with the Action, this Settlement or any appeal, incurred by any attorney on behalf of the Participating Collective Members with respect to the claims against the Defendants. This payment shall relieve Defendants of any other Claims or liability to any other attorney or law firm for any attorneys' fees, expenses or costs to which any of them may claim to be entitled on behalf of the Participating Collective Members and which arise out of the Action. In exchange for such payment, Plaintiff's Counsel will release and forever discharge any attorneys' lien on the Settlement Fund.

**8. Procedure for "Opting In," or Objecting to Collective Action Settlement.**

(a)     <u>Procedure for "Opting In"</u>. By submitting a timely, valid Consent to Join Form, the Collective Member will be deemed to have "opted in" to, or consented to join, an FLSA collective action in this case. No later than fourteen (14) days after the Opt-in Deadline, Plaintiff's Counsel shall file with the Court all timely, valid Consent to Join Forms submitted by Collective Members.

(b)     <u>Procedure for Objecting</u>. The Notice of Proposed Collective Action Settlement shall provide that Collective Members who submit timely, valid Consent to Join Forms have the right to object to the Settlement. The Notice shall provide that in order to object, a Collective Member must submit a timely, valid Consent to Join Form and mail a written

statement to the Settlement Administrator, which must include the name and signature of the objecting Participating Collective Member. Such written statement must be postmarked or transmitted no later than the Opt-in Deadline. Participating Collective Members who fail to submit timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

**9. Final Settlement Approval and Entry of Final Judgment.**

No later than 21 days after the Opt-in Deadline, or such other date set by the Court, Plaintiff shall file a Joint Motion for Final Approval of this Settlement, which will include a proposed order: (1) granting final approval of the Settlement; (2) adjudging the terms of Settlement to be fair and reasonable; (3) directing the Settlement Administrator and the Parties to carry out the Settlement's terms and provisions, including the distribution of Settlement Awards to Participating Collective Members; (4) dismissing the Rule 23 class claims without prejudice (5) dismissing this Action on the merits, with prejudice, in accordance with the terms of this Agreement. Plaintiff will also file a separate Motion for Approval of Attorneys' Fees, Litigation Costs, and Settlement Administration Costs.

**10. Distribution of Settlement Awards.**

(a)     As stated above, within 10 days after the Effective Date, the Settlement Administrator shall mail settlement checks to Participating Collective Members in the amounts set forth in Exhibit 3.

(b)     Participating Collective Members will have one-hundred and twenty (120) calendar days (from the date of mailing) to cash their settlement checks. After sixty (60) calendar days from the mailing of checks, the Settlement Administrator shall mail Participating Collective Members to whom checks were mailed a reminder postcard card regarding the 120-day deadline

to cash their settlement checks. If the Settlement Administrator is unable to deliver a settlement check to a Participating Collective Member, or if a check remains uncashed within one-hundred and twenty (120) calendar days after it is mailed, then the check will be voided and returned to the Settlement Fund, and then be distributed to the National Employment Law Project. If any Participating Collective Member to whom a settlement check was not sent contacts Plaintiff's Counsel, Defendants' Counsel or the Settlement Administrator during the aforementioned 120-day period and requests distribution of his or her portion of the Net Settlement Fund, the Settlement Administrator shall, upon confirmation of such Participating Collective Member's entitlement to such distribution, make the appropriate distribution to such Participating Collective Member.

(c)     Within thirty (30) days of the expiration of the 120-day period described in the preceding paragraph, the Settlement Administrator shall provide Plaintiff's Counsel and Defendants' Counsel with a certification listing the names of the Participating Collective Members who have cashed their settlement checks.

**11. Notice to Putative Class Member**

Defendants represent that they employed one (1) hourly-paid technician whose employment ended before May 25, 2019, who received bonuses similar to those Plaintiff alleges receiving in the Complaint, and may have received overtime compensation at a rate that did not reflect such bonus compensation. In recognition of the fact that this individual is a member of the putative class asserted in the Complaint, but not the Collective, the parties agree that this individual shall not receive any compensation from this settlement and will not in anyway be bound thereby. The Parties further agree, subject to the Court's approval, to direct the Settlement Administrator to mail and e-mail this individual as notice as set forth in Exhibit 4, informing him

17

of this action, the settlement and his exclusion therefrom, and that his statute of limitations for his NYLL claims was tolled during the pendency of this Action.

**12. Nullification or Rescission of Settlement Agreement.**

(a)      In the event the Court denies the motion for preliminary and/or final approval of the settlement and Plaintiff and/or Defendants determine in good faith that such approval cannot be obtained through a renewed motion, objections, motion for reconsideration, and/or appeal without making material changes to this Agreement, Plaintiff and Defendants shall each have the option to declare this Agreement null and void. If either party elects to declare this Agreement null and void, Defendants shall be under no obligation to make any payment under this Agreement, and any Collective Members who filed Consent to Join Forms after the sending of the Notice Packet shall be informed via mail, e-mail, and text message that the Settlement Agreement and their Consent to Join Forms are null and void. Further, should the Final Judgment not be entered or upheld on appeal, the Parties shall not have waived, and expressly reserve, their respective rights with regard to the prosecution and defense of the Action as if this Stipulation never existed. In such case, the Parties and any funds to be awarded under this Settlement shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Agreement had not been executed. Any fees already incurred in the administration of the Settlement shall be the sole responsibility of the Plaintiff's Counsel and shall not be reimbursed. In the event an appeal is filed from the Court's Final Judgment, or any other appellate review is sought prior to the Final Approval, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.

**13. Privacy of Documents and Information.**

Plaintiff and Plaintiff's Counsel agree that none of the documents and information provided to them by Defendants, including but not limited to the documents and information received in connection with the Action through informal or formal discovery, the administration of this Settlement, or any other means, shall be used for any purpose other than prosecution of this Action and the administration of this Settlement.

**14. Exhibits and Headings.**

The terms of this Agreement include the terms set forth in any attached Exhibits, which are incorporated by reference as though fully set forth herein. Any Exhibits to this Agreement are an integral part of the Settlement. The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

**15. Interim Stay of Proceedings.**

Pending Final Approval, the Parties jointly request that the Court hold in abeyance all proceedings in the Action, except proceedings necessary to implement and complete the Settlement. In this regard, the Parties stipulate that until the Settlement is either approved fully or nullified, neither party need serve or respond to responsive pleadings or motions.

**16. Amendment or Modification.**

This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

**17. Entire Agreement.**

This Agreement and attached Exhibits constitute the entire agreement among these Parties, and no oral or written representations, warranties or inducements have been made to any

Party concerning this Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.

### 18. Authorization to Enter Into Settlement Agreement.

Counsel for all Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate this Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the respective Parties to the terms and conditions set forth herein. In the event that the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties may seek the assistance of the Court to resolve such disagreement.

### 19. Binding on Successors and Assigns.

This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

### 20. No Prior Assignments.

The Parties and their counsel represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

### 21. No Admission.

Nothing contained herein, nor the consummation of this Agreement, is to be construed or deemed as an admission of liability, culpability, negligence, or wrongdoing on the part of

20

Defendants or any of the Releasees. The Parties have entered into this Agreement solely with the intention to avoid further disputes and litigation and attendant inconvenience and expense.

### 22. New York Law Governs.

All terms of this Agreement shall be governed by and interpreted according to the laws of the State of New York, except as to any issues governed by federal law.

### 23. Counterparts.

This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

### 24. Jurisdiction of the Court.

The Court shall retain exclusive jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

### 25. Cooperation and Drafting.

Each of the Parties has cooperated in the drafting and preparation of this Agreement. Hence, in any construction made to this Agreement, the same shall not be construed against any of the Parties.

### 26. Invalidity of Any Provision.

Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Agreement valid and enforceable.

### 27. Enforcement Actions.

Nothing in this Agreement prevents the Plaintiff (*i.e.*, excluding Collective Members) from instituting a legal action or other proceeding against the Defendants, or *vice versa*, to enforce any provisions of this Agreement, each party to bear its own attorneys' fees and costs, including expert witness fees, incurred in connection with any enforcement actions.

### 28. Signatories.

It is agreed that because the number of Participating Collective Members is so numerous, it is impossible or impractical to have each Participating Collective Member execute this Agreement. The Notice will advise all Collective Members of the binding nature of the Release, and the Release shall have the same force and effect as if this Agreement were executed by each Participating Collective Member.

**PLAINTIFF AND
PLAINTIFF'S COUNSEL**

DATED: _____, 2023        PLAINTIFF'S COUNSEL


By: _____
　　　Attorney for Plaintiff


DATED: _____, 2023

PLAINTIFF TONY BONURA


_____

22

**DEFENDANTS**

DATED: _____, 2023

UHL VENTURES LLC D/B/A SERVPRO OF
JAMESTOWN/OLEAN

By: _____

Title:

DATED: _____, 2023

WILLIAM UHL

By: _____

23

### 27. Enforcement Actions.

Nothing in this Agreement prevents the Plaintiff (*i.e.*, excluding Collective Members) from instituting a legal action or other proceeding against the Defendants, or *vice versa*, to enforce any provisions of this Agreement, each party to bear its own attorneys' fees and costs, including expert witness fees, incurred in connection with any enforcement actions.

### 28. Signatories.

It is agreed that because the number of Participating Collective Members is so numerous, it is impossible or impractical to have each Participating Collective Member execute this Agreement.  The Notice will advise all Collective Members of the binding nature of the Release, and the Release shall have the same force and effect as if this Agreement were executed by each Participating Collective Member.

**PLAINTIFF AND
PLAINTIFF'S COUNSEL**

DATED: _Sep. 2,_ 2023

PLAINTIFF'S COUNSEL

By: _____

Attorney for Plaintiff
Nicholas Conlon

09 / 01 / 2023
DATED: _____, 2023

PLAINTIFF TONY BONURA

_____

22

Doc ID: 3010396a50d96db82f1a6ce03ac710feaa3c2a25

**DEFENDANTS**

DATED:  September 1, 2023

UHL VENTURES LLC D/B/A SERVPRO OF
JAMESTOWN/OLEAN

By: _William Uhl_

Title: Owner


DATED:  September 1, 2023

WILLIAM UHL

By: _William Uhl_

23

Exhibit 1

| **NOTICE OF PROPOSED COLLECTIVE ACTION SETTLEMENT** |
| To:    All current and former hourly-paid technicians employed by UHL Ventures LLC d/b/a Servpro of Jamestown/Olean and William Uhl during any time from May 25, 2019 through May 24, 2022. |

## ***PLEASE READ THIS NOTICE CAREFULLY***

*This notice is being sent to you in accordance with an order of the United States District Court for the Western District of New York in the pending lawsuit Bonura v. Uhl Ventures, LLC, et al. (the "Lawsuit").*

You are receiving this Notice because you were employed by UHL Ventures LLC d/b/a Servpro of Jamestown/Olean and William Uhl ("Uhl Ventures") as an hourly-paid technician ("Technician") during the period of May 25, 2019 through May 24, 2022. The former Technician who brought the Lawsuit, Tony Bonura, claims that Uhl Ventures violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by deducting two 15-minute breaks per shift from the time recorded by him and other Technicians, thus improperly reducing the total time for which they received hourly wages by up to 30 minutes per shift. Mr. Bonura alleges that Uhl Ventures also violated the FLSA and NYLL by paying technicians' overtime hours at a rate of 1.5 times their base hourly rate, as opposed to 1.5 times their base hourly rate plus the nondiscretionary bonuses they allegedly received.

Uhl Ventures denies that it violated the FLSA or NYLL. Uhl Ventures asserts that the deductions for 15-minute breaks were only in effect from February 17, 2020 through December 5, 2021, and that employees were completely relieved from work during those periods of time.

Mr. Bonura and Uhl Ventures have agreed to the proposed Settlement discussed herein, in which you are eligible to participate. The purpose of this Notice is to inform you of the settlement terms and your rights and options in connection with the Settlement.

If you complete and submit the Consent-to-Join Form in compliance with the procedures in this Notice, you will receive a payment of at least $_____ in exchange for your release of the claims alleged in the Lawsuit.  **The Consent-to-Join Form must be postmarked or electronically submitted on or before [45 days from notice].**

If you do not submit a Consent-to-Join Form, you will not receive a payment and you will not release any claims or relinquish any other legal rights.

| **Why did I get this Notice?** |

Uhl Ventures' payroll records indicate that you were employed as a Technician at some point during the period of May 25, 2019 through May 24, 2022, and are thus eligible to participate in the Settlement.  On _____, 2023, the Court approved a Settlement and ordered this Notice

be sent to you and other Technicians employed in that time periods. This Notice explains what you can get from the Settlement and what rights it affects.

Federal law prohibits Uhl Ventures from retaliating against you for participation or non-participation in the Settlement.  This settlement does not affect any current or future employment between you and Uhl Ventures.

**If you are receiving this Notice, you are entitled to submit a Consent-to-Join Form to receive money under the Settlement.**

### What is this Lawsuit about?

The Lawsuit claims that Uhl Ventures violated the FLSA and NYLL by deducting two 15-minute breaks per shift from the time recorded by hourly-paid technicians, and by paying technicians' overtime hours at a rate of 1.5 times their base hourly rate, as opposed to 1.5 times their base hourly rate plus the nondiscretionary bonuses they allegedly received.

Uhl Ventures denies that it violated the FLSA or NYLL. Uhl Ventures asserts that the deductions for 15-minute breaks were only in effect from February 17, 2020 through December 5, 2021, that employees were completely relieved from work during those periods of time.

Judge John L. Sinatra of the United States District Court for the Western District of New York is overseeing this lawsuit. The lawsuit is known as *Tony Bonura vs. Uhl Ventures LLC, et al.,* Civil Case No. 22-cv-00395 (JLS) (JJM).

### What are the Settlement terms?

The Settlement Agreement, if approved by the Court, will require Uhl Ventures to pay up to $32,500 to resolve the claims asserted in the Lawsuit with respect to Mr. Bonura and any other Technician employed during the period of May 25, 2019 through May 24, 2022 who receives this Notice and timely completes and submits a Consent-to-Join Form.

Mr. Bonura's counsel will seek Court approval to be paid up to $6,500.00 in attorneys' fees and $592 in costs from the $32,500 Settlement amount. The remaining amount will be allocated amongst Mr. Bonura and the other eligible Technicians into "Settlement Shares" representing each employee's portion of the damages Mr. Bonura's counsel estimates they are owed. Settlement Shares will only be paid to Mr. Bonura and to each Technician to whom this notice is addressed who timely completes and submits a Consent-to-Join Form.

Your Settlement Share, which you must timely complete and submit a Consent-to-Join Form to receive, is $____. By submitting a Consent-to-Join Form, you agree to be bound by the Settlement, including the release of the FLSA and NYLL claims asserted in the Lawsuit, arising through DATE OF PRELIMINARY APPROVAL.

| | Your Legal Rights and Options in this Lawsuit |
|---|---|
| **Submit a Consent-to-Join Form** | Complete and submit Consent-to-Join Form to receive your payment. Agree to the release Uhl Ventures from claims based on the FLSA and NYLL violations alleged in the Lawsuit, arising through DATE OF PRELIMINARY APPROVAL. <br><br> If you wish to receive your payment, and agree to be bound by the Release described herein, you must complete, sign and return the enclosed Consent-to-Join Form, which must be mailed, emailed, or faxed to: <br><br> [Insert Administrator Contact mailing address, email address, and fax number] <br><br> You may also submit a Consent-to-Join Form by visiting the following website and entering the ID code contained on your Consent-to-Join Form: **[INSERT LINK TO NOTICE WEBSITE].** <br><br> The Consent-to-Join Form must be postmarked or electronically transmitted on or before [**45 days from notice**]. |
| **Do Nothing** | If you do not timely complete and submit a Consent-to-Join Form, you will not receive any payment from the Settlement or release any claims. |

**How was my Settlement Share amount determined?**

The Settlement Share available to Mr. Bonura and each other Technician covered by the Settlement represents 100% of the wages plus 28% of the potential liquidated damages that he or she would stand to recover at a trial based on the claims alleged in the Lawsuit, based on an estimate of the potential damages prepared by Mr. Bonura's counsel. This estimate is based on records of each employee's weekly hours worked and pay rates while employed by Uhl Ventures assumes that Technicians were paid for an average of 9 hours per shift and that Uhl Ventures' deduction of thirty (30) minutes of pay from each shift was limited to the time period from February 17, 2020 through December 5, 2021.

Your $_____ Settlement Share represents your proportionate share of the estimated damages, based on the number of weeks you worked as a Technician for Uhl Ventures from May 25, 2019 through May 24, 2022, which according to Uhl Ventures' records, is _____.

3

**How long do I have to cash my check?**

If you timely complete and submit a Consent-to-Join Form and the Court approves the Settlement, the Settlement Administrator will then mail a payment of your settlement share to you at the address to which this Notice was sent, or to an updated address if you provide one on your Consent-to-Join Form or by otherwise notifying the Settlement Administrator and/or Mr. Bonura's counsel.

Your Settlement check will have a date on it. The settlement checks will be valid for one hundred twenty (120) days, unless the check is returned due to a bad address, in which case, the check will be reissued. You will have 120 days from that reissue date to cash your check.

If you lose your check or it is damaged in the mail, contact the Settlement Administrator. You may be able to have it reissued, provided you ask within the 120-day time period.

If you do not cash your check within 120 days of the date it was issued, your check will be void and will be returned to Defendants.

**Will I owe any taxes?**

For each settlement share, one half will be treated as back wages and will be subject state and federal withholding taxes and any other applicable payroll deductions and reported on an IRS Form W-2. The other half will be treated as liquidated damages and paid without any withholdings and reported on an IRS Form 1099-MISC. If you have questions about the tax consequences of the payment to you, you should consult with an accountant or other tax advisor. Plaintiffs' Counsel cannot provide tax advice.

**Do I have to pay any attorneys or other costs?**

No. The Plaintiff Tony Bonura is represented by attorneys Jason T. Brown, Nicholas Conlon, and Patrick Almonrode of the law firm Brown, LLC, who also represent another Technician who has already consented to join the Lawsuit. If you timely complete and submit a Consent-to-Join Form, it will be presumed that you are electing to be represented by Mr. Bonura's attorneys, unless you otherwise indicate you are electing to appear through different counsel, which you are free to do.

Attorneys Jason T. Brown, Nicholas Conlon, and Patrick Almonrode of the law firm Brown, LLC can be reached by email at flsagroup@jtblawgroup.com and by telephone (toll-free) at (877) 561-0000.

Any payments for attorneys' fees and/or reimbursement of attorney' costs are subject to Court approval in the maximum amounts of $6,500.00 in attorneys' fees and $592 in costs. If the Court approves payments of attorneys' fees and costs in these amounts, they will be paid by Uhl Ventures separately from and without reducing your $____ Settlement Share. Your share would increase if the Court approves less than the requested amounts in attorneys' fees and costs.

**What rights am I giving up by submitting a Consent-to-Join Form?**

If you timely completely submit a Consent-to-Join Form, you agree to be bound by the "Release" in the Settlement, which means you will not be able to sue William Uhl, Uhl Ventures LLC, and/or any of Uhl Ventures' present and former parent companies, subsidiaries, and affiliated companies (whether now or hereafter), and each of their respective shareholders, owners, insurers, members, officers, directors, employees, attorneys, managers, agents administrators, successors, and assigns for any claims based on the FLSA and NYLL violations alleged in or that could have been alleged in the Lawsuit based on the facts alleged therein, arising through DATE OF PRELIMINARY APPROVAL, including all claims for deductions from pay and any and all minimum wage, straight-time, and overtime claims, and any interest, penalties, liquidated damages, and attorneys' fees and costs relative to all such claims.

**What rights am I preserving by NOT submitting a Consent-to-Join Form?**

If you do not timely complete and submit a Consent-to-Join Form, you will not receive any payment from the Settlement or release any claims. Because you will not release any claims, you will remain free to bring any claims you may have against Uhl Ventures in the future, including but not limited to claims under the FLSA and/or NYLL.

There are statutes of limitations that may prevent you from bringing a new lawsuit if you wait too long. The statute of limitations to assert FLSA claims is 2 years, and 3 years for violations proven to be willful. The statute of limitations to assert NYLL claims is 6 years, and will be deemed "tolled" (i.e. paused) with respect to the NYLL claims asserted in the Lawsuit from May 25, 2022 until the date on which it is dismissed.

---

**Can I object to the Settlement?**

---

If you timely complete and submit a Consent-to-Join Form, you may "object" to the Settlement if you believe the terms thereof or the monetary relief provided thereby is not fair and reasonable and should not be approved by the Court. To submit a valid objection, you must complete and sign a written statement entitled "Objection" to the Settlement Administrator, postmarked or electronically submitted by [45 days from notice]. The written statement must include your name and may include any explanation of why you believe the terms thereof or the monetary relief provided thereby is not fair and reasonable and should not be approved by the Court.

---

**How do I find more information?**

---

This Notice is only a summary of the Lawsuit and the Settlement. For a more detailed statement of the Lawsuit or Settlement, you may refer to the pleadings, the Settlement Agreement, and the other papers filed in the Case, which may be inspected at the Office of the Clerk of the U.S. District Court for the Western District of New York, during regular business hours of each court day. You also may obtain copies of this Notice and/or the Settlement Agreement or further

information regarding the Settlement from the case website: **[INSERT LINK TO NOTICE WEBSITE].**

Please feel free to direct questions to the Settlement Administrator, who can be reached by e-mail at _____ and/or by telephone (toll-free) at _____.

You can also direct questions to Mr. Bonura's attorneys Jason T. Brown and Nicholas Conlon of the law firm Brown, LLC, who can be reached by email at flsagroup@jtblawgroup.com and by telephone (toll-free) at (877) 561-0000.

**PLEASE DO NOT CONTACT THE COURT OR THE JUDGE WITH ANY INQUIRIES.**

**Exhibit 2**

*Tony Bonura vs. Uhl Ventures LLC, et al.*

**U.S. District Court, Western District of New York, No. 22-cv-00395 (JLS) (JJM)**

**Collective Action Settlement**

**CONSENT-TO-JOIN FORM**

If you wish to receive your payment, and agree to be bound by the Release described in the Notice, you must complete, sign, and return the enclosed Consent-to-Join Form, which must be mailed, emailed, or faxed to:

[Insert Administrator Contact mailing address, email address, and fax number]

You may also submit a Consent-to-Join Form by visiting the following website and entering the ID code contained on your Consent-to-Join Form: **[INSERT LINK TO NOTICE WEBSITE].**

The Consent-to-Join Form must be postmarked or electronically transmitted on or before [**45 days from notice**].

The Settlement Administrator will provide your completed Consent-to-Join Form to Mr. Bonura's counsel, who will file it with the Court.

INSTRUCTIONS

1. You must <u>sign</u> and <u>return</u> this Consent-to-Join Form in order to be eligible to be paid money from the FLSA portion of this Settlement. Your Consent-to-Join Form must be received, postmarked, or transmitted on or before [**45 days from notice**], or it will be rejected.

2. If your mailing address changes, before you receive payment, please provide your updated address to the Settlement Administrator, whose contact information is above. It is your responsibility to keep a current address on file at the address shown above.

3. If you sign and return this Consent-to-Join Form and it is either received, postmarked or transmitted on or before the date above, then provided the Court grants final approval of the Settlement and Uhl Ventures complies with the Settlement, you will receive your Settlement Share of at least $_____.

4. Submitting a Consent to Join Form will not impact your current or future employment status with Uhl Ventures.

5. By signing and returning this form, you agree and consent to the following:

   a. to be a party plaintiff in the lawsuit styled *Tony Bonura vs. Uhl Ventures LLC, et al.,* Civil Case No. 22-cv-00395 (JLS) (JJM) (W.D.N.Y.), seeking redress for violations of the FLSA pursuant to 29 U.S.C. § 216(b);

b.  to be represented by the law firm of Brown, LLC, or by different counsel who will appear on your behalf; and

c.  to be bound by the "Release" in the Settlement, which means that if the Court grants final approval of the Settlement, you will not be able to sue William Uhl, Uhl Ventures LLC, and/or any of Uhl Ventures' present and former parent companies, subsidiaries, and affiliated companies (whether now or hereafter), and each of their respective shareholders, owners, insurers, members, officers, directors, employees, attorneys, managers, agents administrators, successors, and assigns for any claims based on the FLSA and NYLL violations alleged in or that could have been alleged in the Lawsuit based on the facts alleged therein, arising through DATE OF PRELIMINARY APPROVAL, including all claims for deductions from pay and any and all minimum wage, straight-time, and overtime claims, and any interest, penalties, liquidated damages, and attorneys' fees and costs relative to all such claims.

_____       _____
(Sign your name here)                 (Date)

_____       _____
Print Your Name Here                  Former Names (if any)

2

## CONTACT INFORMATION
### (this page will not be filed with the Court)

(_____) _____      (_____) _____
Area Code    Daytime Phone #        Area Code    Evening Phone #


_____      _____
Email address                        Home address

**Exhibit 3**

| Collective Members (by last 4 SSN digits)* | Minimum Collective Settlement Award |
|---|---|
| | $4,304.06** |
| | $737.46 |
| | $297.04 |
| | $1,429.29 |
| | $3,539.64 |
| | $889.52 |
| | $2,342.61 |
| | $414.18 |
| | $468.49 |
| | $949.47 |
| | $1,238.42 |
| | $235.93 |
| | $651.82 |
| | $3,756.13 |
| | $1,351.31 |
| | $1,577.51 |
| | $259.83 |
| | $803.73 |
| | $47.81 |
| | $2.38 |
| | $85.82 |
| | $25.56 |
| **Grand Total** | $25,408.00 |

* Collective Members' last 4 social security number digits are included on Exhibit 3, but have been redacted for filing.

** Plaintiff Tony Bonura's Collective Settlement Award

Exhibit 4

## NOTICE OF DISMISSAL OF LAWSUIT

### ***PLEASE READ THIS NOTICE CAREFULLY***

*This notice is being sent to you in accordance with an order of the United States District Court for the Western District of New York in the lawsuit Bonura v. Uhl Ventures, LLC, et al. (the "Lawsuit").*

You are receiving this Notice because you were employed by UHL Ventures LLC d/b/a Servpro of Jamestown/Olean and William Uhl ("Uhl Ventures") as an hourly-paid technician ("Technician") during the period of May 25, 2016 through May 24, 2019. Accordingly, you were part of a putative "class" of employees on whose behalf the Lawsuit was brought.

The former Technician who brought the Lawsuit, Tony Bonura, claims that Uhl Ventures violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by deducting two 15-minute breaks per shift from the time recorded by him and other Technicians, thus improperly reducing the total time for which they received hourly wages by up to 30 minutes per shift. Mr. Bonura alleged that Uhl Ventures also violated the FLSA and NYLL by paying technicians' overtime hours at a rate of 1.5 times their base hourly rate, as opposed to 1.5 times their base hourly rate plus the nondiscretionary bonuses they allegedly received.

Uhl Ventures denies that it violated the FLSA or NYLL. Uhl Ventures asserted that the deductions for 15-minute breaks were only in effect from February 17, 2020 through December 5, 2021, and that employees were completely relieved from work during those periods of time.

On DATE, the Lawsuit was dismissed based on a Court-approved Settlement in which Technicians employed during the period of May 25, 2019 through May 24, 2022 were eligible to participate. You were not eligible to participate in the Settlement because you were not employed by Uhl Ventures as a Technician during this time period.

You are not bound by the Settlement, and thus remain free to bring any claims you may have against Uhl Ventures in the future, including but not limited to claims under the FLSA and/or NYLL. There are statutes of limitations that may prevent you from bringing a new lawsuit if you wait too long. The statute of limitations to assert FLSA claims is 2 years, and 3 years for violations proven to be willful. The statute of limitations to assert NYLL claims is 6 years, and because you were part of a putative "class" of employees on whose behalf the Lawsuit was brought, your 6-year statute of limitations was "tolled" (i.e. paused) with respect to the NYLL claims asserted in the Lawsuit from May 25, 2022 until the [DISMISSAL DATE], for a total of ___ days.

**PLEASE DO NOT CONTACT THE COURT OR THE JUDGE WITH ANY INQUIRIES.**